ROGERS, Circuit Judge,
concurring in part and dissenting in part:
A sentencing enhancement for perjury under section 3C1.1 of the United States Sentencing Guidelines (“U.S.S.G.”) “can be imposed only if the district court finds that the defendant gave ‘false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory.’ ” United States v. Smith, 374 F.3d 1240, 1245 (D.C.Cir.2004) (quoting United States v. Dunnigan, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993)). The district court concluded that Brockenborrugh’s sentence should be increased for obstruction of justice upon finding he had committed perjury at trial by denying: (1) he had evicted the squatters occupying the real property that was the object of the conspiracy, (2) he had threatened the executor that he would withdraw the extra attention and protection that his connections with local police had obtained for the property, and (3) he had an intimate relationship with his co-defendant, Denise McLeod. These were the only findings made by the district court in determining an obstruction of justice enhancement was appropriate.
This court does not address the first finding and there is no support for it in the record. This court’s efforts to find support for the other two findings are valiant, but those findings are directly contradicted by trial testimony that shows Brockenborrugh admitted making the threat and having the intimate relationship. The court acknowledges that the district court clearly erred by finding that Brockenborrugh threatened to withdraw the extra police attention but discovers an additional, non-erroneous finding that was neither argued by the parties nor articulated by the district court. As regards the relationship, the court finds that Brockenborrugh’s testimony could be construed as insufficiently forthright. Op. at 741-42. Perhaps so. But that is not what the district court found, nor what the Sentencing Guidelines require. See U.S.S.G. § 3C1.1 & cmt. nn. 2, 4(a). Because de novo factfinding is incompatible with the role of an appellate court, see, e.g., United States v. Burke, 888 F.2d 862, 869 (D.C.Cir.1989), I would remand the case for resentencing.
I.
In Gall v. United States, 552 U.S. 38, 128 S.Ct. 586, 597, 169 L.Ed.2d 445 (2007), the Supreme Court reaffirmed that review *743 of a sentencing court’s factual findings is for clear error. See also United States v. Day, 524 F.3d 1361, 1367 (D.C.Cir.2008); United States v. Edwards, 496 F.3d 677, 681 (D.C.Cir.2007). Accordingly, this court’s role is limited to determining whether “the district court’s account of the evidence is plausible in light of the record viewed in its entirety.” Anderson v. Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). Under dear-error review, the court may not disturb the district court’s factual findings unless it is “left with the definite and firm conviction that a mistake has been committed.” Id. at 573, 105 S.Ct. 1504. But this deference to the sentencing court’s choice between “two permissible views of the evidence,” id. at 574, 105 S.Ct. 1504, does not mean that this court may uphold an erroneous factual finding simply because the record contains some “evidence to support it,” id. at 573, 105 S.Ct. 1504. Nor, as a practical matter, does it require this court to approach all factual findings in the same way. See Easley v. Cromartie, 532 U.S. 234, 243, 121 S.Ct. 1452, 149 L.Ed.2d 430 (2001); Bessemer City, 470 U.S. at 575, 105 S.Ct. 1504; Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 499-501, 104 S.Ct. 1949, 80 L.Ed.2d 502(1984). In the instant case, this court is not reviewing factual findings based on assessments of the credibility of a witness or the culpability of a defendant’s mental state but the district court’s straightforward findings that while on the witness stand Brockenborrugh falsely denied three things. See Op. at 739-40. The court is to be cognizant, in determining whether the sentence should be remanded in light of clearly erroneous factual findings, of the lesser costs to the systemic interests in finality where resentencing, as opposed to retrial, is the appropriate remedy. See United States v. Saro, 24 F.3d 283, 287-88 (D.C.Cir.1994).
The background to the district court’s imposition of the obstruction of justice enhancement is as follows. Without any citations to the record, the government’s sentencing memorandum asserted that Brockenborrugh had committed perjury at trial by falsely denying that he: “evicted the tenants,” “displayed a U.S. Marshals badge,” “asserted the authority of a federal marshal,” “represented himself to the heirs as a federal marshal,” “threatened [the executor] Ms. Robinson that he could cause the withdrawal of police attention to her property,” and “had an ongoing relationship with his co-defendant.” Gov’t’s Sent. Mem. 7. The government therefore asked the district court to increase the sentence based on his obstruction of justice. Id. citing U.S.S.G. § 3C1.1, & cmt. n. 2. The presentence report did not make a recommendation regarding obstruction of justice under § 3C1.1. In written objections to the presentence report, defense counsel stated: “There is no evidence of obstructing justice in this case and the allegations of the government are without merit. The transcript of the proceedings will sustain the defendant[’]s position.” Opp’n Mem. 2. Counsel repeated his objection at the sentencing hearing.[1]
The district court concluded that a two-level upward adjustment in the offense level for obstruction of justice was warranted. In the district court’s view, the trial testimony had been “crystal clear” as to Brockenborrugh’s obstruction of justice. Trial Tr. 24 (Feb. 14, 2008). The district court found that Brockenborrugh committed perjury by falsely denying on the witness stand that he: (1) “evicted the tenants when, in fact, that is precisely what *744 he did on that day in question, and he did it while asserting his authority as an alleged Federal Marshal”; (2) “threatened Ms. Robinson [the executor of the property] ... that he could influence the police to withdraw their extra attention and protection for the property”; and (3) had an “extremely close, not to say intimate relationship with, Ms. McLeod.” Id. at 741-42. As regards the third finding, the district court noted that prior to cross-examination Brockenborrugh “pretended that he barely knew her”; “tried to pretend that he did not know where she lived”; and “tried to pretend that they did not have a personal relationship.” Id. at 741.
II.
An examination of Broekenborrugh’s trial testimony demonstrates a remand for resentencing is required:
A. The Eviction. As this court apparently acknowledges by its silence, the district court’s finding that Brockenborrugh perjured himself by denying that he evicted the tenants at the Robinson property is clearly erroneous. The government does not maintain on appeal that Brockenborrugh evicted the tenants, and points to no evidence in the record to support such a finding or to rebut the contrary evidence identified by Brockenborrugh that two of the government’s own witnesses testified at trial that the D.C. Fire Department conducted the eviction.
B. The Threat. The district court found that Brockenborrugh “denied that he threatened Ms. Robinson ... that he could influence the police to withdraw their eoctra attention and protection for the property.” Id. at 741-42 (emphasis added). On appeal, the government maintains that the evidence supported the finding that Brockenborrugh “threatened to influence the police to withdraw their extra attention and protection of the property and that his denial of having done so was false.” Appellee’s Br. 60. And, indeed Brockenborrugh was recorded making just such a threat during a pre-trial meeting with Ms. Robinson, and the recording was played in open court for the jury before Brockenborrugh testified. On the recording, Brockenborrugh threatened Ms. Robinson that if he could not buy the property, then the police would no longer provide extra attention and protection to the property on his behalf.[2] But, contrary to the district court’s finding, Brockenborrugh did not perjure himself at trial by denying making the threat. Rather, at trial he admitted making the threat, testifying that he told Ms. Robinson that if she sold the property to someone else, “[the police] wouldn’t be going by [the property] on [his] behalf.”[3]
*745 The court acknowledges that the district court clearly erred in finding that Brockenborrugh denied threatening to withdraw the extra police attention. Op. at 740. To save the district court’s factual finding from being clearly erroneous, the court discovers a second component to the district court’s actual finding, effectively making its own findings of fact and concluding that the district court implicitly must have made those findings as well. The court finds that at his pre-trial meeting with Ms. Robinson “Brockenborrugh threatened to have the police stop paying extra attention to the property, which meant, in effect, that the police would leave the property without protection from squatters,” Op. at 740, but that he falsely denied making this threat during his trial testimony, id. As support for this unarticulated finding by the district court, the court finds that “[a]l-though acknowledging that the police had a general duty to protect all property, Brockenborrugh cynically added, ‘[Y]ou know how police are,’ implying that without his participation the police would do nothing at all to protect this property.” Id. (quoting Appx. 143). The court proceeds to find that when testifying at trial Brockenborrugh “denied, however, threatening that police protection would cease altogether,” id., as a result of the withdrawal of the extra protection, id.
“[FJactfinding is the basic responsibility of district courts, rather than appellate courts, and ... the Court of Appeals should not .... resolve[ ] in the first instance [a] factual dispute which had not been considered by the District Court.” In re Sealed Case, 552 F.3d 841, 845 (D.C.Cir.2009) (quoting Pullman-Standard v. Swint, 456 U.S. 273, 291-92, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982)) (alterations in original). Thus, where the record evidence is susceptible of more than one reasonable interpretation and the district court fails to make findings on a material issue or where its findings are unclear or incomplete, remand, not affirmance based on de novo factfinding by this court, is the proper course. See id. at 848; United States v. Henry, 557 F.3d 642, 649-50 (D.C.Cir.2009). Notwithstanding what the district court could have found, this court must be able to “conclude with confidence” from the record that the district court actually made and relied on findings which would support the imposition of the increased sentence. United States v. McCoy, 242 F.3d 399, 411 (D.C.Cir.2001); see also Sealed Case, 552 F.3d at 848. This restraint makes sense: the court owes deference to the district court’s findings, not to the findings it could have made. See United States v. Askew, 529 F.3d 1119, 1142 n. 4 (D.C.Cir.2008).
Instead, the court concludes that although the district court actually found that Brockenborrugh falsely denied threatening to withdraw the “extra attention and protection,” the district court implicitly *746 found that Brockenborrugh falsely denied that the result of the withdrawal of extra attention would mean, in reality, the withdrawal of all police protection for the property. The effect is to convert the actual finding that Brockenborrugh denied withdrawing “extra attention and protection” into a finding that he denied withdrawing “extra attention and [therefore all] protection.” No amount of “context,” Op. at 741, can disguise that the district court did not make that finding. Notwithstanding the court’s protest that it is not engaging in de novo factfinding, see id., the court’s holding that the district court did not clearly err in finding Brockenborrugh perjured himself on the witness stand with respect to the threat he made to Ms. Robinson relies only on its own de novo factfinding.
The court claims to derive the requisite confidence in its reading of the district court’s actual finding from two sources. First, the court states that its interpretation of the district court’s finding is “crystal clear,” borrowing the phrase that the district court used in describing its confidence in findings that were, as the court acknowledges, see supra at 744; Op. at 740, riddled with clear error. Critically the court cannot and does not hold that its reading of the evidence, much less of Brockenborrugh’s trial testimony, is the only one that the district court could reasonably have adopted. In both his recorded statement and in his trial testimony Brockenborrugh drew a distinction between the “extra” police attention and protection he asked the police to provide for the Robinson property and the general attention and protection the police would otherwise provide. Supra notes 2 & 3. As a result, it is hardly obvious that in his recorded statement Brockenborrugh implied that without the extra protection the Robinson property would be without any protection at all, but that he denied implying this “threat” in his trial testimony. Second, the court finds support in the government’s assertion in its sentencing memorandum that Brockenborrugh falsely denied threatening that he could “ ‘cause the withdrawal of police attention to her property’ altogether.” Op. at 741 (quoting Gov’t’s Sent. Mem. 7) (emphasis added). But the government’s pre-sentencing view of the evidence is not the one that the court now ascribes to the district court. Rather, the court concludes that the district court implicitly found that Brockenborrugh falsely denied that withdrawing the extra attention would result in the loss of all police protection. The government’s pre-sentencing claim that Brockenborrugh threatened to withdraw “police attention ” from the property does not support the conclusion that the district court’s finding of a threat to withdraw “extra attention and protection” clearly implied a finding of a threat to withdraw extra attention that would result in the loss of all protection.
How far afield the court has strayed by discovering an implicit component of the district court’s factual finding is evident given that it is neither what the district court stated it found nor what the parties argued. Rewriting the district court’s findings to match the appellate court’s view of a finding that the evidence would support runs contrary to this court’s repeated recognition that such de novo fact-finding is inconsistent with its proper role. See Henry, 557 F.3d at 649-50; Burke, 888 F.2d at 869; Askew, 529 F.3d at 1142 n. 4. Given the district court’s “spare explanation,” Op. at 740, of its perjury finding, this court must accept the straight forward finding as meaning what the district court stated, reflecting the distinction Brockenborrugh drew in his testimony between “extra” and general police protection, without recourse to additional words or to an obscure tension between Brockenborrugh’s trial testimony and his recorded statement first discovered by this court on appeal.
*747 Because the district court’s factual finding about the threat was clearly erroneous, a remand is required unless the district court’s third factual finding in support of the increased sentence for obstruction of justice is not clearly erroneous.
C. Intimate Relationship. The district court found that in his trial testimony Brockenborrugh “very obviously denied his extremely close, not to say intimate relationship with, Ms. McLeod.” Trial Tr. 24 (Feb. 14, 2008). As noted, this finding rested on the grounds, identified by the district court, that Brockenborrugh pretended “that he barely knew her”; “that he did not know where she lived”; and “that they did not have a personal relationship.” Id. at 741. This court appears to accept that the first two subsidiary findings were clearly erroneous. Op. at 741-42. First, as the government concedes, Brockenborrugh pretended that he did not know where Ms. McLeod lived during a pretrial interview with the FBI, not during his testimony at trial. Second, the court rightly declines to adopt the government’s suggestion that in describing his business relationship with Ms. McLeod on direct examination Brockenborrugh “pretended that he barely knew her.” This suggestion also appears to have been based on Brockenborrugh’s pretrial interview with the FBI, rather than his trial testimony. Such statements to investigators, whether false or not, cannot support the obstruction of justice enhancement because the district court made no finding that Brockenborrugh’s denial to the FBI “significantly obstructed or impeded the official investigation or prosecution of the [case],” U.S.S.G. § 3C1.1 cmt. n. 4(g), and the government points to no record evidence to support such a finding.
Still, while accepting that two of the district court’s subsidiary findings were clearly erroneous, the court concludes that the district court did not clearly err in finding that Brockenborrugh falsely denied his intimate relationship with Ms. McLeod in the absence of an actual denial by him. It reasons that the district court could properly conclude that by trying to pretend that he did not have an intimate relationship with McLeod, Brockenborrugh constructively denied the relationship. Op. at 741-42. The record demonstrates otherwise. On direct examination, Brockenborrugh did not suggest one way or the other the nature or extent of any personal relationship with Ms. McLeod after he first met her in 1999, and on cross examination he readily admitted that he had an intimate relationship with her beginning in mid or late 2002 and ending in December 2004 or January 2005.
Prior to Brockenborrugh’s taking the witness stand, the district court had ruled that the prosecutor could impeach his testimony by inquiring on cross examination about his intimate relationship with Ms. McLeod. See Op. at 736. Following this ruling, Brockenborrugh’s counsel called him as a witness and asked him to describe “basically [his] relationship” with Ms. McLeod.[4] Brockenborrugh answered, *748 “[w]ell, basically my relationship with Ms. McLeod started in 1999 basically,” swpra note 4, before explaining how he had met and come to work with her in 1999, six years before the charged conspiracy took place and three years before they had an intimate relationship. His answer neither referred to their intimate relationship in 2002-04 or early 2005 nor to relevant details about the extent of their business interactions, such as how often he had purchased property with Ms. McLeod, cf. Trial Tr. 156 (Oct. 25, 2007), and how she had assisted his attempts to obtain the property from Ms. Robinson. His counsel’s following questions did not imply that by explaining how he had met Ms. McLeod in 1999, he had failed to answer the question put to him. Rather defense counsel proceeded to inquire about Ms. McLeod’s management of Brockenborrugh’s rental properties before turning his attention to the Robinson property. On cross-examination, Brockenborrugh testified that he thought he had finished answering his counsel’s question by describing “basically” how his relationship with Ms. McLeod had begun.[5] When the prosecutor then asked if he had actually had a “much more personal relationship,” he admitted that he had, stating “[t]hat was later on.” Supra note 5. He explained that he had not mentioned the intimate relationship in answering his counsel’s question because “[he] wasn’t having a[n intimate] relationship with her [in] '99,” id., and that he had not understood the question to address their relationship after that time. He then proceeded to describe the intimate relationship in response to further questions on cross-examination.
As a result, the district court’s finding that on the witness stand Brockenborrugh “very obviously denied his extremely close, *749 not to say intimate relationship, with Ms. McLeod,” Trial Tr. 24 (Feb. 14, 2008), is clearly erroneous. No matter how diligently one searches his trial testimony, he never denied having this relationship; instead he admitted it. Yet the court finds no clear error, reasoning that because Brockenborrugh was “on notice” that his intimate relationship with Ms. McLeod was “relevant,” “[i]t is fair to infer that Brockenborrugh was intentionally concealing the true nature of his relationship when he testified that his prior description [on direct examination], which made no mention of the romance, was complete.” Op. at 741. The court’s approach is flawed.
First, Brockenborrugh’s answer on direct examination did not suggest anything to the jury about the full extent of his business or any personal relationship with Ms. McLeod after 1999. Nor could his statement on cross examination that he thought he had finished answering defense counsel’s question. The transcript of his trial testimony would not support a finding that as a result of these answers the jury was led into thinking he was denying having an intimate relationship with Ms. McLeod. The government’s brief unhelpfully characterizes defense counsel’s question as an “opened-end” invitation to “tell the jury about his relationship with McLeod,” omitting the word “basically.” Appellee’s Br. 59; see supra note 5. The brief also overlooks that Brockenborrugh’s response expressly limited his description to the relationship’s starting point. Moreover, no evidence pointed to by the government rebuts the express limitation in defense counsel’s question and in Brockenborrugh’s answer by showing that he considered his intimate relations with Ms. McLeod in 2002-04 or early 2005 to be a fundamental part of their relationship. Rather, while admitting they had sex during that time, he testified he was “not her boyfriend or anything,” supra note 5, and the district court sustained the defense objection when the prosecutor referred to their relationship as an “affair,” Trial Tr. 135 (Oct. 25, 2007).
Second, far from demonstrating that the district court’s finding was not clearly erroneous, the court’s reasoning explains only why the district court could have found that Brockenborrugh purposefully did not mention the intimate relationship until he was asked a question that required him to do so. Brockenborrugh was “on notice,” Op. at 741, that he could be impeached on cross examination about his intimate relationship with Ms. McLeod, see Op. at 736 (quoting the district court, Trial Tr. 57 (Oct. 25, 2007)), not that he was expected or somehow obligated to divulge it on direct examination. Even assuming a better defense strategy would have been to disclose the intimate relationship on direct examination, and avoid the almost certain possibility the subject would be raised during cross-examination and afford the prosecutor an opportunity to question whether he had been less than fully responsive to his counsel’s question, this is not the same as Brockenborrugh denying he and Ms. McLeod had an intimate relationship. And even assuming that the district court concluded that Brockenborrugh intended to conceal the true nature of the relationship, the trial transcript shows that he did not do what the district court found he did: he did not deny during his trial testimony the existence of his intimate relationship with Ms. McLeod. Because the district court’s finding that he did is without basis in the record, it is clearly erroneous.
Hi Hí Hí
In our legal system different roles are assigned to trial and appellate courts, and it behooves this court not to blur the lines. The district court found Brockenborrugh’s *750 sentence should be increased because he perjured himself by falsely denying he evicted the squatters, threatened to withdraw extra police attention and protection, and had an intimate relationship with Ms. McLeod. His denial of evicting the tenants was not false and he admitted threatening to withdraw the extra police attention and protection and having an intimate relationship with Ms. McLeod. To overcome those admissions, the court infers findings that the district court did not make. Our review is narrowed by the deference owed to the district court’s factual findings, but this court cannot affirm on the basis of a finding of a false denial that the district court could, but did not, make. Nor can it affirm on the basis of testimony that is not actually false simply because the district court could permissibly have found that Brockenborrugh harbored an intention to keep information from the jury until he was asked directly about it. Whether the district court would have so found is for the district court to decide, not for this court to infer.[6] Accordingly, because none of the three factual findings supporting the two-level upward enhancement of Brockenborrugh’s sentence for obstruction of justice under U.S.S.G. § 3C1.1 survive clear error review, I would remand the case for resentencing; otherwise I concur.

. In urging that Brockenborrugh has failed to show “error, let alone plain error,” Appellee's Br. 58, the government overlooks defense counsel’s timely, on-point objection. See United States v. Rashad, 396 F.3d 398, 401 (D.C.Cir.2005) (citing Fed.R.Crim.P. 51(a)); United States v. Edmond, 52 F.3d 1080, 1103— 04 (D.C.Cir.1995).

. Working with the FBI, Ms. Robinson recorded her meeting with Brockenborrugh and Ms. McLeod on October 19, 2005. Brockenborrugh was recorded telling Ms. Robinson:
I mean if we, if we ... were out of this situation they [the squatters] will go back up in there.... They’ll take those signs up[.][T]he only, the only reason why the police are doing anything, I know that's their job [...] [b]ut you know how police are.
They, you know, they come out and say, hey, I Broch man, I been checking on that house up there and I wanna catch somebody in there, and they said, you know, you still, you still in the mix on this right? I said yeah, please I appreciate it[.][I]ts okay, now we're going to do this for you. [...] You know, but ... [flhey'll help[.][I]f, if, I can't, if I don’t do my part and get this thing sewed up ... [tjhey’re not gonna[.][T]hey’re gonna stop. [...] They're gonna say well, hey, it’s like anything else.
Appx. 143-44 (alterations and omissions to improve readability).

. Brockenborrugh’s trial testimony was:
Q: But as a personal favor to you they were looking after that property?
A: A police officers [sic] said that, that as a personal favor to me they would go by and *745 keep an eye on it during the midnight tour, on the evening tour and the day tour.
Q: And do you remember saying to Ms. Robinson, hey you know how the police are though. If I'm not in this anymore, hey you know, they will not go by there anymore? A: If she had sold it to somebody else, why — I mean they wouldn’t be going there on my behalf. That is their job to go by there and check on that property, or any property. It is not — it is not — they are no longer doing — I asked him to do me a favor and check on the property. I had never any intention of having them or using that to swindle somebody into selling me their properly. I asked them to do it for me as a favorite [sic] to take — I have a lot of friends, elderly friends that say, can you have the police come by? And I say, can you go by and check on somebody's property for me?
Trial Tr. 187 (Oct. 25, 2007) (emphasis added); see also id. at 188 (“I said that, you know, eventually, when the property is sold or whatever, they are not going to just go by and check on that one location on a daily basis.”).

. Defense counsel asked Brockenborrugh whether he knew the co-defendant Denise McLeod and after he responded “Yes, I do,” defense counsel asked him to "tell the court, and the jury, and the prosecutor basically your relationship with Ms. Denise McLeod.” Brockenborrugh answered:
Well, basically my relationship with Ms. McLeod started in 1999 basically. I was introduced to her by her husband at Superi- or Court, because she did taxes. Ms. McLeod did probably about, I would say, 50 percent of the CSOs and people around the courthouse's taxes. Upon, you know, being introduced to her as far as taxes went, she told she did real estate. So at that point, I was interested in buying — I told her that I wanted to buy a four unit apartment building.
Trial Tr. 68-69 (Oct. 25, 2007) (emphasis added). Brockenborrugh then answered questions about the four-unit apartment building *748 and McLeod's work as a property manager for him before counsel directed his attention to his attempted purchase of the property at issue in this case.

. On cross-examination, the prosecutor asked Brockenborrugh about his personal relationship with McLeod:
Q. Now [defense counsel] asked you on direct examination this morning what your relationship was with Ms. McLeod. Did you get a chance to finish that answer?
A. I think I finished it.
Q. You said you met her in 1999?
A. Yes
Q. And you and she began a business relationship?
A. Yes.
Q. Did you, in fact, have a much more personal relationship with Ms. McLeod?

A. That was later on.

Q. When did you begin a more personal relationship with Ms. McLeod?
A. Well, it had to be after she was divorced.
Q. Well, approximately what year do you believe? If you began a business relationship with her in 1999, when did you begin a personal relationship with her?
A. Maybe the middle or end of 2002. There was — but I was not involved in a — I was not her boyfriend or anything.
Q. But you were having sexual relations with her?
A. Yes, I did.
Q. Okay. And so when [defense counsel] asked you on direct examination about your relationship with Ms. McLeod and you said in '99 I met her and I began a business relationship, you left out the other part?
A. Left out the other part? In '99 — I wasn’t having a relationship with her [in] '99.
Q. Okay. So you did not understand Mr. Rosen's question on direct to mean what has been your relationship with Ms. McLeod since 1999?

A. Right. I did not understand that.

Q. You skipped over that part of your relationship with Ms. McLeod?
A. It was not asked me, what was my relationship, my personal relationship with her at that time.
Id. at 133-38 (emphasis added).

. The Supreme Court instructed in United States v. Dunnigan, 507 U.S. 87, 96, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993), that if the defendant objects to a sentence enhancement under U.S.S.G. § 3C1.1. resulting from his trial testimony, as occurred here, "a district court must review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same, under the perjury definition we have set out. See U.S.S.G. § 6A1.3 (Nov. 1989); Fed.R.Crim.P. 32(c)(3)(D). See also Burns v. United States, 501 U.S. 129, 134, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991). When doing so, it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding.”