# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued February 6, 2012          Decided July 13, 2012

No. 09-3096

UNITED STATES OF AMERICA,
APPELLEE

v.

LANCE LAMONT GATLING,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:94-cr-00298-1)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Neil H. Jaffee*, Assistant Federal Public Defender, entered an appearance.

*Suzanne Grealy Curt*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Roy W. McLeese III* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Before: SENTELLE, *Chief Judge*, GRIFFITH, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

2

GRIFFITH, *Circuit Judge*: Lance Lamont Gatling appeals the district court's denial of his motion to modify his sentence. For the reasons set forth below, we affirm the district court.

I

On July 8, 1994, Gatling entered the apartment of an undercover agent of the Bureau of Alcohol, Tobacco, Firearms, and Explosives to sell him cocaine. The deal went awry, and Gatling pulled a gun and shot and wounded the agent. Police backup responded to the wounded agent's call for help and arrested Gatling. In 1995, a jury convicted him of multiple offenses related to the shooting, including possession of a firearm as a convicted felon, 18 U.S.C. § 922(g)(1) (1989), but the jury also acquitted him of attempted murder of a federal employee, 18 U.S.C. § 1114 (1989), and assault with intent to commit robbery while armed, D.C. Code §§ 22-501, 22-3202 (1993). *United States v. Gatling*, 639 F. Supp. 2d 4, 5 (D.D.C. 2009). Gatling was sentenced to 270 months in prison, and we affirmed his conviction and sentence on appeal. *United States v. Gatling*, 107 F.3d 923 (D.C. Cir. 1996). He now argues that he is entitled to a hearing on whether his sentence should be reduced. Assessing his claim requires that we venture into the labyrinth that is the United States Sentencing Guidelines.

Gatling brought his motion pursuant to 18 U.S.C. § 3582(c)(2), which provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . upon motion of the defendant . . . the court may reduce the term of imprisonment . . . if such a

reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.* Gatling's argument begins with U.S.S.G. § 1B1.10(a)(1), which states:

> In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2).

U.S. SENTENCING GUIDELINES MANUAL § 1B1.10(a)(1) (2011). Subsection (c), in turn, lists Guidelines Amendment 591 as a ground for reduction. Amendment 591 became effective on November 1, 2000, and provides that the selection of a defendant's offense conduct guideline (the starting point for determining the seriousness of an offense, and therefore its sentence) must be based only on convicted conduct. *See* U.S. SENTENCING GUIDELINES MANUAL app. C, amend. 591 & cmt. (2003).

Relying on the change wrought by Amendment 591, Gatling argues that his sentence should be reduced. He claims the sentencing court based his offense conduct guideline on attempted murder, of which he was acquitted, rather than felon in possession of a firearm, of which he was convicted. Attempted murder has a higher Guideline range than felon in possession of a firearm.[1] According to Gatling, Amendment 591's bar on beginning a sentencing calculation with

---

[1] Gatling was also convicted of dealing cocaine, which carried a maximum statutory sentence of forty years. *Gatling*, 639 F. Supp. 2d at 9.

acquitted conduct lowers a sentencing range, triggering the protections afforded by 18 U.S.C. § 3582(c)(2).[2] Gatling argues he is entitled to the benefit of this change in the law and seeks a hearing under § 3582(c)(2) to see if his sentence should be reduced.

The district court disagreed. Reviewing the transcript of the sentencing hearing and the presentencing reports submitted by the parties, the court identified the three steps it took to reach Gatling's ultimate sentence. *Gatling*, 639 F. Supp. 2d at 9. The court explained that it started at Sentencing Guideline § 2K2.1, which covers convictions for felons in possession of a firearm and provides that "[i]f the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, . . . apply . . . § 2X1.1 (Attempt, Solicitation, or Conspiracy) . . . ." U.S. SENTENCING GUIDELINES MANUAL § 2K2.1(c)(1) (2003). Following that cross-reference, the court turned to § 2X1.1, which instructs, "When an attempt, solicitation, or conspiracy is expressly covered by another offense guideline section, apply that guideline section." *Id.* § 2X1.1(c)(1). Having concluded from a preponderance of the evidence that Gatling had attempted to kill the agent, the court followed the direction of § 2X1.1(c)(1), looked to the guideline for attempted murder, § 2A2.1, and entered a sentence within its suggested range. *Gatling*, 639 F. Supp. 2d at 9. Gatling appealed to us, and we exercise jurisdiction under 18 U.S.C. § 1291.

---

[2] As the district court noted, there is some skepticism regarding whether Amendment 591 "falls within the sweep of § 3582(c)(2)." *Gatling*, 639 F. Supp. 2d at 6 n.2. Because we find that the sentencing court did not choose attempted murder as the offense conduct guideline, we need not resolve this issue.

5

II

We now face a question of fact — what happened at the sentencing hearing — and review the district court's determination for clear error. *See United States v. Edwards*, 496 F.3d 677, 683 (D.C. Cir. 2007); Appellant's Br. 15. We conclude that the district court did not clearly err by finding that it reached Gatling's ultimate sentence by starting with § 2K2.1.

At the hearing, the district court announced that Gatling's sentence would reflect that a preponderance of the evidence had shown that he attempted to murder the federal agent. *See United States v. Settles*, 530 F.3d 920, 923 (2008) ("[A] sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proved by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction."). Because attempted murder carried a longer sentence than felon in possession of a firearm, Gatling tried (unsuccessfully) to convince the court that he should be sentenced to the lesser amount. While the thrust and details of this argument are of no concern to this appeal, one part of his counsel's presentation is. He retraced the convoluted steps the Guidelines prescribe, starting with § 2K2.1, the guideline for the crime for which Gatling was convicted:

> [T]he way the Court got to section 2A2.1, the attempted murder guideline, was by way of section 2K2.1, which applies to the gun offenses in this case. That contains a cross-reference at section 2K2.1(c). . . . It is this cross-reference provision in section 2K2.1 that after a few twists and turns leads the Court back to 2A2.1. 2K2.1

sends the Court to 2X1.1, the attempt provision, and 2X1.1 then refers the Court back to 2A2.1. That's how the Court can get there by operation of the guidelines for the gun count . . . .

Sentencing Tr. 51:25-52:19, Sept. 19, 1995.

The court's conclusion that it began with § 2K2.1 also squares with Gatling's argument in his 1995 Presentencing Memorandum that the court should start there:

If the Court decides to sentence Mr. Gatling for attempted murder of which the jury acquitted him, the Court must still consider U.S.S.G. § 2K2.1. That guideline contains a cross-reference that directs the court to . . . look to U.S.S.G. § 2X1.1, which . . . also contains a cross-reference provision. . . . The application notes to § 2X1.1 state that "[o]ffense guidelines that expressly cover attempts include . . . § 2A2.1."

Def.'s Mem. in Aid of Sentencing 15-16. The Government's Presentence Investigation Report also recommended that the sentencing court begin calculating Gatling's sentence from § 2K2.1. Presentencing Investigation Report 6 ("Count 8 — Possession of a Firearm . . . . The United States Sentencing Commission Guideline for violation of 18 U.S.C. § 922(g)(1) is found in U.S.S.G. § 2K2.1 . . . ."). Thus, both the government and the defendant proposed that the sentencing court start from § 2K2.1, and the sentencing court never indicated that it did otherwise. In fact, the transcript of the sentencing hearing shows that the court followed along carefully, flipping through the pages of the Guidelines as Gatling's attorney explained how they took the court from the sentencing range for felon in possession of a firearm to attempted murder. Sentencing Tr. 52:6-7 ("Let me go back to

the 2K again so I can follow this, please."). All of this points in the same direction: however the sentencing court may have determined Gatling's sentence, it started at § 2K2.1.

Arguing that the court started the calculation of his sentence with acquitted conduct, Gatling seizes upon the court's reference to two cases that used acquitted conduct in sentencing, *United States v. Foster*, 19 F.3d 1452 (D.C. Cir. 1994); and *United States v. Boney*, 977 F.2d 624 (D.C. Cir. 1992). But as we read the transcript, the court referred to these cases only as support for the principle that acquitted conduct can be used for some purposes in sentencing, not to determine the offense conduct guideline.

As Gatling concedes, neither *Foster* nor *Boney* considered how to determine an offense conduct guideline. Appellant's Br. 17. They both concerned the use of acquitted conduct in sentencing within a selected guideline. *Foster*, 19 F.3d at 251-52; *Boney*, 977 F.3d at 635-36. And the court relied upon them for the proposition that acquitted conduct used for that purpose need only be found by a preponderance of the evidence. Sentencing Tr. 22:9-17 ("Ms. Kenny, on this matter, I think we're guided by *United States v. Foster*, at 19 F.3d 1452 in our circuit, and they also recognize *U.S. v. Boney*, 977 F.2d at 624 . . . . What is improper about the Court, under the guidelines . . . to consider acquitted conduct if it finds it has been proven appropriately by in this circuit a preponderance of the evidence?"); *id.* at 42:23-25 ("In reviewing the evidence, the Court has tried to carefully consider whether or not it's satisfied, as I said, by a preponderance of the evidence . . . ."); *id.* at 43:9-11 ("Using *Foster*, by finding a preponderance of the evidence, the Court will reject the defendant's request to follow the Third Circuit's *Kikamura* decision requiring clear and convincing evidence . . . ."). In any event, the discussion of these cases

occured before Gatling's reminder of how the court "got" from § 2K2.1 to § 2A2.1, which suggests that the court first considered whether it could use acquitted conduct at all before discussing the appropriate way to reach such conduct.

The sentencing court did mention that it was "going to consider the acquitted conduct under 2A2.1(b)(1)," Sentencing Tr. 40:21-22, which, according to Gatling, suggests the choice of § 2A2.1 as the offense conduct guideline. But this statement is equally consistent with the sentencing court starting from § 2K2.1, reaching § 2A2.1 via cross-reference, and then relying on acquitted conduct when applying § 2A2.1(b)(1) after permissibly arriving at that section. Given the wide berth we grant when reviewing district courts for clear error, these statements cannot offset what the other evidence supports: the sentencing court chose felon in possession as Gatling's offense conduct guideline. *See Am. Soc'y for the Prevention of Cruelty to Animals v. Feld Entm't, Inc.*, 659 F.3d 13, 16 (D.C. Cir. 2011) ("[T]o find clear error, we must be 'left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))).

This appeal underscores an important feature of modern federal sentencing practice: the Sentencing Guidelines have become increasingly complex, and the adoption of amendments with retroactive application has increased the need for sentencing courts to describe the winding path they followed through the Guidelines to arrive at a particular sentence. It is no longer enough to reach a lawful result without detailing the route taken to get there. Switching metaphors, on this playing field one cannot go from Tinker to Chance without mention of Evers. *See* Franklin P. Adams, *Baseball's Sad Lexicon* (1910), *reprinted in* BASEBALL: A

9

LITERARY ANTHOLOGY 20 (Nicholas Dawidoff, ed. 2002). Sentencing courts must spell out the steps they take, and the attorneys who appear before them must lend their hand to help ensure the route followed is clear.

## III

The judgment of the district court is

*Affirmed.*